U.S. DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION
C.A. No. _____

PO-ZEN WONG,
      Plaintiff,

v.

ANNA FANG AND DAVID WONG,
      Defendants.

## COMPLAINT

      Plaintiff, Po-Zen Wong, for his Complaint and Demand for Jury Trial against the Defendants Anna Fang and David Y. Y. Wong, states as follows:

### PARTIES

    1.  Plaintiff Po-zen Wong ("Po-zen") is a resident of Amherst, Hampshire County, Massachusetts.  He is the defendant in a suit presently pending in this Court, *Wong et al v. Wong*, docket No. 3:10-cv-11095-MAP (the "Anna Trust Action").  Said action involves questions of law and facts common with this action.

    2.  Defendant, Anna Fang, ("Anna") is the mother of Po-zen Wong.  She is a resident of Oxnard, California.  She is the real party in interest in the Anna Trust Action, being the settler and beneficiary of the revocable trust for the purported benefit of which the Anna Trust Action has been brought.

    3.  Defendant David Wong ("David") is a resident of Santa Barbara, California.  He is the son of Anna Fang and the brother of Po-zen, Roy and Everett Wong.  On information and belief, he is Trustee of the Anna Fang S.Y. Fang Trust (said trust and all

predecessor revocable trusts for Anna Fang are hereafter collectively referred to as the "Living Trust").  He is a residual beneficiary of the Living Trust.

## JURISDICTION

4.  This Court has jurisdiction under 28 U.S.C. §1332, as the matter in controversy exceeds $75,000 and there is diversity of citizenship between the Plaintiff and the Defendants.

5.  This Court has jurisdiction over the Defendants Anna Fang and David Wong pursuant to Massachusetts General Laws, Chapter 223A§ 3 (a) arising out of their transacting of business in the Commonwealth, (b) contracting to supply things in the Commonwealth at times pertinent hereto, and (c) committing tortious and other acts with resulting damage in the Commonwealth to a Commonwealth citizen.

6.  Venue is proper in the United States District Court for the District of Massachusetts, Western Division,  pursuant to 28 U.S.C. §1391, in that Po-zen Wong resides in the district and a substantial part of the assets that are the subject of this action and the related Anna Trust Action are situated in this district.

## FACTS COMMON TO ALL COUNTS

7.  Anna Fang was married to Nan-ping Wong until his death in 1985.  They had six children from the marriage.  At the time of his death, Nan-ping owned, among other things, a valuable collection of Chinese calligraphy and paintings (the "Art Collection").

8.  After the death of Nan-ping and his father You-lin, portions of the Art Collection were sold, transferred, exchanged, donated  and bequeathed, including to the Chinese Government, the Wong family and extended family members and museums.

9.  In 1986, a dispute among Anna Fang and her daughters Karen and Laura arose about control of the Art Collection.  Po-zen Wong mediated a settlement among Anna and the sisters.  It let them select a portion of the Art Collection ahead of others as their shares of inheritance from Nan-ping's estate.  As the result of this agreement, the sisters Laura and Karen each received specific pieces of artwork worth approximately $1 million according to the Wang appraisal (see paragraph 16, below)

10. Between 1987 and 1990, most of the remaining classical paintings (19th century or older) ("the Massachusetts Collection") that now belonged to Anna and the sons (Everett, David, Po-zen and Roy) were shipped to Po-zen, who had relocated from Ridgefield, Connecticut to Amherst, Massachusetts in 1988.  Po-zen began planning an exhibition of the collection to honor Nan-ping's legacy.

11. In late 1990, Anna Fang and the sons reached a settlement agreement to divide the Massachusetts Collection as their respective shares of inheritance from Nan-ping's estate. Anna would keep half and the sons would get equal shares from the other half.  Each son would select one-eighth of the paintings held by Po-zen Wong at that time, a total of 132 pieces of classical paintings and 86 fan paintings.

12. Po-zen Wong compiled a list of the Massachusetts Collection, and sent it to Anna and the brothers.  The list divided the paintings into groups based on Nan-ping's own ranking.  Each son would select a few from each group such that they would each get a total of seventeen paintings and ten fan paintings.

13. David Wong and Po-zen Wong finalized their selections in early 1992.  Po-zen and David each selected seventeen works.  Everett and Roy asked Anna to select for them but she did so only for Everett and not for Roy.

14. In 1991, the Wong family made an agreement with Yale University to support an exhibition of the Art Collection and all members agreed that they would not sell any of the exhibited paintings until 1996, one year after the close of the exhibition.

15. In or about 1992, the Art Collection was appraised by K.S. Wang, an expert of Chinese paintings from Christie's. Mr. Wang estimated that the Art Collection had a consignment value of approximately $6 million if they were consigned to Christie's for auction at that time.

16. According to the Wang valuation, the paintings selected by the two daughters in 1986 were valued at close to $2 million and those held by Po-zen for Anna and the sons in the Massachusetts Collection were valued at about $4 million.

17. Anna Fang and the sons were aware of this valuation in the summer of 1992.

18. Anna Fang kept lists of the paintings in the Massachusetts Collection. Between 1992 and 1996, she relayed to Po-zen Roy's and Everett's directions as to their inheritance shares and the need to sell paintings to raise the cash for their shares. She was actively engaged in valuing and selecting the paintings to be sold.

19. Anna Fang had frequent interactions with dealers and auction companies after Nan-ping's death in 1985. She also executed sales on her own in Hong Kong.

20. Anna Fang was well informed of auctions results in the 1990s, which typically sold 50-80% of the offered lots, and most of them at prices at or near the consignment values. She was aware that there were few valuable paintings outside those in the Yale exhibition that could be sold to meet the needs of Roy and Everett before 1996.

21. Since Anna Fang did not select a share of paintings for Roy Wong, who had no interest in keeping any artwork, they agreed between themselves in 1992 that Roy Wong

would receive $400,000 in cash instead of the seventeen paintings. They asked Po-zen to help them sell paintings to raise the money. He did so in 1993 and Roy Wong was paid the full $400,000 that year.

22. Subsequently, in 1994, Everett Wong was unemployed. Shortly after the opening of the exhibition at Yale, he negotiated with Anna Fang to trade his seventeen paintings for the same amount. They again asked Po-zen to sell paintings to raise the money. He did so and Everett Wong was paid half the amount in 1995 and the half in 1996.

23. The $400,000 figure for Roy and Everett's inheritance shares was determined by direct discussion among Anna Fang and the sons. It was deemed to be a fair estimate of what might be realized by each of them if they themselves undertook to sell their inheritance share paintings in auctions at that time. The average consignment value of each share was estimated to be about $500,000, or one-eighth of the $4 million total. There would, however, be selling expenses and fees and some paintings would be unsold.

24. After Anna told Po-zen Wong that she did not want to buy Roy's share herself and that she did not want to sell other paintings she kept in Hong Kong because of the weak market, Po-zen sold three paintings from his own share to raise about $240,000 to pay his brothers' inheritance shares.

25. David Wong collected his inheritance share of paintings in full after the exhibition ended in 1995. Some of the paintings from Everett Wong's original share were also given to David Wong by Anna Fang either as gifts to him or for donation to the Santa Barbara Museum of Art for tax benefits.

26. By the end of 1996, all of Po-zen Wong's siblings had either actual possession of the paintings they had selected as their inheritance shares, or an equivalent amount of cash they agreed to with Anna Fang.  What remained of the Massachusetts Collection in Po-zen Wong's home belonged only to him and Anna Fang.  They had both contributed money to pay for Everett Wong and Roy Wong's inheritance shares, but the ownership of each piece was not settled.  In late 1997, almost a full year after everyone else had gotten their inheritance shares, Po-zen Wong asked Anna Fang to settle the matter and agree which of the two of them owned which paintings.

27. Anna Fang replied that she wanted Po-zen Wong instead to continue to work on her behalf to sell more paintings to raise additional money for Roy Wong and Everett Wong.

28. Anna Fang offered to leave the rest of her share of the Massachusetts Collection to Po-zen Wong in her will in exchange for his doing more selling, and in recognition of all the other work he had done for the family over the years, including (1) resolving Anna Fang's disputes with the sisters in 1986 and with relatives in China in 1989, (2) planning and overseeing an Art Collection exhibition, (3) raising the money to pay Everett and Roy, and (4) managing Anna Fang's financial accounts since 1986.

29. To demonstrate her sincerity, Anna Fang sent Po-zen Wong a will dated August 1996, which she had executed with a law firm in Hong Kong.  It left all but three paintings to him.  A true and correct copy of the will is attached hereto as Exhibit A.

30. Po-zen Wong declined the offer.  Anna Fang had revised her will two or three times in the preceding several years and Po-zen had no assurance that she would not do so again.

31. After some discussion, Po-zen Wong and Anna Fang reached an agreement.  Po-zen Wong would, for the last time, sell some more paintings for Anna Fang to give money to Everett and Roy, and she would also select a few more paintings for David Wong.  But after that, Anna Fang would relinquish all her interest in the remainder of the Massachusetts Collection as her settlement with and gift to Po-zen Wong.  She would still keep all the 20th century paintings in her home.  Po-zen insisted that the agreement be in writing

32. In February 1998, Anna Fang executed a Letter of Agreement, memorializing the agreement, after consulting with her own attorney in Hong Kong.  In September 1998, after Po-zen Wong had sold two paintings and sent the $350,000 proceeds to Anna Fang, she sent him the original handwritten, witnessed and notarized Letter of Agreement to Po-zen Wong.  She did not keep a copy of it for herself.  A true and correct copy of the Letter of Agreement is attached hereto as Exhibit B.

33. The Letter of Agreement was accompanied by a separately notarized list of paintings (Exhibit C).  The Letter of Agreement promised him that if he undertook to raise another $400,000 each for Roy Wong and Everett Wong, to be put in a trust for them which he would manage, he would own all the remaining paintings on the list, which included all but six of the Massachusetts paintings held by Po-zen Wong.

34. Anna Fang explained in the Letter of Agreement that she understood Po-zen would get more paintings than his siblings and she wanted him to carry on the family legacy.

35. Anna also sent to Po-zen a separate letter addressed to Po-zen Wong's siblings.  In that letter, Anna Fang explained to them that she wanted to provide each of the

brothers with cash or paintings to match the value of what the two sisters had gotten when they selected their shares, which was close to $1 million each.  A true and correct copy of the letter is attached hereto as Exhibit D.

36. In Anna Fang's disposition scheme, Everett Wong and Roy Wong received $800,000 in trust and, with Po-zen Wong's management of the trust fund, it could grow to $1 million.  The six paintings that Anna Fang set aside for David Wong, to be given to him upon Anna Fang's death, would also bring the value of his inheritance share to above $1 million.  Three of those six paintings were originally selected by Everett and one was originally selected by Po-zen in 1992.

37. Anna Fang also inserted in the list of paintings (Exhibit C) an introductory note stating that they were given to Po-zen Wong in January, 1995.  The list included all the paintings selected by Po-zen Wong for his inheritance share in 1992 that had not been already sold, donated, or set aside to give to David.

38. Anna Fang knew that her gift disposition would not be well received by some or all of Po-zen Wong's siblings.  In the cover letter she wrote to Po-zen Wong (a true copy of which is attached hereto as Exhibit E) when she sent him the three notarized documents (the Letter of Agreement, the list of paintings, and the letter to his siblings, Exhibits B, C and D, respectively), she instructed him to not disclose the matter to anyone else.  He honored this request until 2008 when she gave him a release in writing allowing him to reveal the agreement to his brothers.

39. In the Cover Letter (Exhibit E), Anna Fang also stated that she had a separate will to distribute other properties in her home, which included her 20th century paintings and other valuables and personal effects.  She kept this will in draft form so that she

could revise it easily.  A true copy of this 1998 draft will is attached hereto as Exhibit F. The Massachusetts Collection of art is included in this draft will, evidencing her understanding that she no longer owned any part of it.

40. Po-zen Wong signed the Letter of Agreement (Exhibit B) after he received it to indicate his acceptance of the terms, and, in reliance, carried out the requested tasks.  He sold paintings selectively by individual negotiation with dealers.  Anna Fang was fully informed of each transaction as the proceeds were sent to her after each sale.

41. In 1999, after Anna Fang had accumulated $800,000 in her account in Hong Kong, Po-zen Wong set up the ER Trust as the trustee for Everett Wong and Roy Wong. Anna Fang then wired the $800,000 into the trust account.  Po-zen Wong has continued to serve as the trustee to this date.

42. On or about September 17, 1999, Po-zen Wong created the ER Trust for the benefit of Roy Wong and Everett Wong.  It was amended and restated on June 18, 2008 at Roy Wong's request.

43. As of the time he finished the initial funding of the ER Trust for Roy and Everett Wong, Po-zen Wong became the sole owner of the remaining paintings he kept in Massachusetts, with the exception of the six paintings Anna had set aside for David.

44. Po-zen Wong has made all investment decisions, kept all the records and filed all tax returns for the ER Trust.

45. Po-zen Wong has never charged or received any fee for serving as the trustee for the ER Trust.

46. On or about March 13, 2008, Everett Wong's 50% interest in the trust was fully distributed to him, for which he received $990,500.  Prior to that, between 2002 and

2007, Everett had received distributions that totaled approximately $270,000.

47. Before the distribution, Everett Wong received all financial records that he requested, including prior year tax returns, account statements, and appraisal of the family art collection made by KS Wang. He agreed to the amount of the payment without raising any question or objection.

48. Roy Wong has received a total of approximately $375,000 in annual distributions since 2002. His share of the ER Trust has remained in the trust and, as of December, 2010, its value is about $900,000,

49. The Living Trust, a revocable trust, was established by Anna Fang in July, 2003 and Po-zen Wong accepted the role of trustee.

50. This trust was comprised of three of Anna Fang's investment accounts and contained no paintings. Po-zen Wong administered the Living Trust in Massachusetts. Anna Fang maintained personal bank accounts in the Commonwealth for about twenty years. She opened those accounts during her visits to Po-zen Wong's home in Amherst. She had personally written many checks from those accounts.

51. Po-zen Wong was the sole trustee of the Living Trust until it was amended in February, 2008, at which time Anna Fang appointed herself. All assets in the Living Trust were transferred back to Anna Fang's control before his last day of service.

52. Po-zen Wong issued a final report of the financial assets to Anna Fang on January 26, 2008 and provided all information requested by Anna, Everett and David regarding the assets in the trusts. These included prior years' tax returns, statement of financial accounts in the trust, etc. He continued to assist with the filing of tax returns for the Living Trust through June, 2009, more than a year after his term as trustee had ended.

53. As a result of Po-zen Wong's management, the assets in the Living Trust experienced substantial gains.

54. No paintings of any kind were ever part of the Living Trust during the time Po-zen Wong was trustee.

55. No compensation was ever charged or received by Po-zen Wong or paid to him for services to the Living Trust.

56. At all relevant times, Po-zen Wong safely maintained paintings, had paintings photographed, repaired and remounted, appraised, and dealt with dealers and auction houses to facilitate sales.   In addition, Po-zen Wong performed services in 2009 in preparing and safeguarding the shipment of certain paintings belonging to Anna Fang or David Wong to counsel.  Po-zen Wong was not compensated for these efforts.

57. In September, 2008, Anna Fang further amended and restated the Living Trust and named David Wong as Trustee.  For the first time, she and David purported to add to the Trust the paintings from the Art Collection, including paintings Anna knew belonged to Po-zen Wong as his inheritance share since 1992.

58. In June 2009, David Wong, as Anna Fang's trustee, retained Attorney Diana Lee to issue a demand letter to Po-zen Wong to return the paintings.  Po-zen Wong replied and directed her attention to Anna Fang's three separately notarized documents.   In particular, he explained to her the that Anna Fang removed all references to her death in the three documents and replaced them with expressions to reflect the nature of a contract, gift and settlement agreement with Po-zen Wong while she was living.  Po-zen Wong also noted that the list of paintings (Exhibit C) included all the paintings he owned from his inheritance share since 1992, which confirmed that it was not revocable by

Anna.

59. On October 29, 2009, Anna Fang, individually, and David Wong, as Trustee, commenced an action against Po-zen Wong in the Superior Court of Santa Barbara, California.  In said action, Anna Fang and David Wong insinuated, falsely, that the Art Collection had always been part of the Living Trust and sought recovery of it from Po-zen Wong.  However, the exhibit they submitted to support the claim was a revised trust executed two days before filing.  The 1998 Letter of Agreement, which is the central document that pertains to ownership, and which Attorney Lee had already read, was not disclosed to the Court.  In fact, Anna and David were in possession of copies of Anna's correspondence which are exhibits to this Complaint, all of which reveal Anna Fang's agreement.  None of them were disclosed to the Court.

60. In two separate decisions, judges of the California Superior Court dismissed the Petition by Anna Fang and David Wong for lack of jurisdiction.  Both judges ruled "…the controversy relates to the disposition of a substantial art collection, which was not part of the trust until 2009."  Earlier, they noted that Po-zen Wong, "…a resident of Massachusetts, claims that the art collection is his personal property."  Po-zen Wong spent approximately $40,000 in attorneys' fees and expenses defending the California litigation.

61. Subsequently, Anna Fang purported to execute an assignment of all her claims to David Wong, as Trustee of the Anna S. Y. Fang Trust.  He then filed the Anna Trust Action in the U. S. District Court in Springfield in his capacity as sole trustee.

62. Anna Fang and David Wong also convinced Roy Wong and Everett Wong to join in the suit, and to claim they had not received their fair share of either their inheritance

> Based on an appraisal and other information, Petitioners are informed and believe that the Art Collection was valued between $4,000,000 and $5,000,000 in the late 1980s and early 1990s.  It has increased in value substantially since then and is now believed to be valued in excess of $15,000,000.

The earlier figures are entirely consistent with the appraisal by Mr. Wang in 1992 and as related by Po-zen Wong to Anna and the brothers.

63. Notwithstanding their own knowledge of the agreements and the appraised values by Mr. Wang, the Plaintiffs in the Anna Trust Action allege that Po-zen Wong deliberately undervalued the collection to mislead everyone.

## COUNT I
### (Breach of Contract v. Anna Fang)

64. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 63 above.

65. The 1998 Letters from Anna Fang to Po-zen Wong were a contract by which Po-zen Wong agreed to assist Anna Fang with her gifting plan to her sons, in exchange for which Anna Fang agreed to give Po-zen Wong such artwork from the family collection as remained in his possession in Amherst after he had carried out the assigned tasks, except for six paintings to be set aside for David.

66. Po-zen fully performed his obligations under the contract, including by funding the ER Trust in the manner directed by Anna Fang, and acting as ER Trust trustee for many years.

67. Anna Fang has breached the contract by refusing to grant or recognize Po-zen Wong's ownership of the artwork from the Art Collection in Po-zen-Wong's possession. She now claims to own even the most valuable paintings that Po-zen Wong had owned

since 1992 from his inheritance share.

68. Anna Fang's breach has proximately caused damage to Po-zen Wong, including without limitation the value of Anna Fang's portion of the Art Collection, the amount of the funding of the ER Trust by Po-zen Wong, and foreseeable attorneys' fees among other damages.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant Anna Fang (1) in an amount to be proved in excess of $75,000 and (2) granting Po-zen Wong full ownership of the artwork at issue, and for such other and further relief as this Court deems just and proper.

## COUNT II
### (Promissory Estoppel v. Anna Fang)

69. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 68 above.

70. Through her 1998 letters and other conduct, Anna Fang promised Po-zen Wong that if he followed her directions, including funding and managing the ER Trust, that she would give him ownership of her portion of the Art Collection then in Po-zen Wong's possession.

71. In reasonable and detrimental reliance on this promise, Po-zen Wong allowed Anna Fang to take one of his paintings to give to David upon her death, sold his own paintings to fund the ER Trust and spent many years as the ER Trust's sole trustee.

72. Po-zen Wong has been damaged accordingly.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant Anna Fang in an amount to be proved in excess of $75,000, and for such other and further relief as this Court deems just and proper.

## COUNT III
### (Estoppel v. Anna Fang)

73. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 72 above.

74. Through her 1998 letters and other conduct, Anna Fang represented to Po-zen Wong that if he followed her directions, including funding and managing the ER Trust, that she would give him ownership of her portion of the family art collection then in Po-zen Wong's possession.

75. In reasonable and detrimental reliance on this representation, Po-zen Wong allowed Anna Fang to take one of his paintings to give to David upon her death, sold his own paintings to fund the ER Trust and spent many years as the ER Trust's sole trustee.

76. Po-zen Wong has been damaged accordingly.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant Anna Fang in an amount to be proved in excess of $75,000, and for such other and further relief as this Court deems just and proper.

## COUNT IV
### (Misrepresentation v. Anna Fang)

77. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 76 above.

78. Through her 1998 letters, Anna Fang represented to Po-zen Wong that if he followed her directions, including funding and managing the ER Trust, that she would give him ownership of her portion of the Art Collection then in Po-zen Wong's possession.

79. Anna Fang's representation was false. She had no intention then, or ever, of

giving Po-zen Wong her portion of the Art Collection then in Po-zen's Wong's possession.  She tried to treat Po-zen Wong's share of inherited paintings as her own.

80. In reasonable and detrimental reliance on this representation, Po-zen Wong allowed Anna Fang to take one of his paintings to give to David upon her death, sold his own paintings to fund the ER Trust and spent many years as the ER Trust's sole trustee.

81. Po-zen Wong has been damaged accordingly.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court (1) enter judgment in his favor and against Defendant Anna Fang in an amount to be proved in excess of $75,000; (2) grant to Po-zen Wong full ownership of the artwork at issue; and (3) for such other and further relief as this Court deems just and proper.

## COUNT V
## (Abuse of Process v. Anna Fang)

82. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 81 above.

83. In 2008, following frivolous demands for return of the disputed artwork, Anna Fang filed suit against Po-zen Wong in California, claiming ownership of the artwork once owned by Anna Fang and in Po-zen's possession.

84. The suit was without merit because Anna Fang had promised that same artwork, in writing in 1998, to Po-zen Wong, provided he perform his promised obligations, which he did by 1999  All of this was known by Anna Fang.

85. The suit had no legitimate motive and was brought out of malice.  The purpose of the lawsuit was to wrongfully and without real basis extort money or artwork, or both, from Po-zen Wong.  The lawsuit was prompted by the sudden dramatic increase in auction prices of Chinese art.

86. The California court dismissed the lawsuit for lack of jurisdiction, noting that Anna Fang had falsely implied in her submissions to the court that the artwork at issue had been placed in a trust she settled, of which Po-zen was trustee for several years.

87. As a result of the abuse of process, Po-zen Wong has sustained damage, including the $40,000 of attorneys' fees and expenses incurred in obtaining dismissal of the California lawsuit.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant Anna Fang in an amount to be proved in excess of $40,000, and for such other and further relief as this Court deems just and proper.

## COUNT VI
### (Tortious Interference with Contract v. David Wong)

88. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 87 above.

89. There was a contract formed between Anna Fang and Po-zen Wong in 1998, by which Po-zen Wong agreed to fund a trust for his brothers and Anna Fang agreed to give Po-zen Wong the portion of the Art Collection owned by her and then in Po-zen's possession.  Po-zen Wong performed his obligations under the contract.

90. In 2008, the other sons of Anna Fang, including David Wong, learned of the contract between Anna Fang and Po-zen Wong.

91. With improper motive and by improper means, David Wong interfered with the contract between Anna Fang and Po-zen Wong.  His motive was greed and self-interest in part to secure additional artwork for himself or under his control by assisting Anna Fang in wrongfully extorting additional artwork and money from Po-zen Wong, spurred by the recent dramatic increases in the value of Chinese art at auction.

92. Among the improper means used by David Wong to interfere with the contract were: (1) persuading Anna Fang to fire Po-zen Wong as trustee of the Living Trust without legitimate cause; (2) persuading Anna Fang to install him as trustee of the successor to the Living Trust, the Living Trust; (3) persuading Anna Fang to transfer all her bogus claims to the artwork at issue, and all of her claims against Po-zen Wong, to the Trust of which he was sole trustee; (4) individually and as sole trustee, filing a frivolous lawsuit against Po-zen Wong in California; (5) lying to family members about the background of the disputed artwork and defaming and libeling Po-zen Wong to family members as a liar, a thief, and a disloyal son; (6) as sole trustee of the Living Trust, filing a meritless action against Po-zen Wong in federal court in Massachusetts.

93. As a result of David Wong's tortious interference, Anna Fang has refused to acknowledge her agreement with Po-zen and refused to perform her obligations.

94. As a result of David Wong's tortious interference, Anna Fang has breached and repudiated her contract with Po-zen Wong, with resulting damage to Po-zen Wong.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant David Wong in an amount to be proved in excess of $75,000, and for such other and further relief as this Court deems just and proper.

## COUNT VII
### (Civil Conspiracy v. Anna Fang and David Wong)

95. Plaintiff Po-zen Wong incorporates herein as if set forth in full Paragraph nos. 1 through 94 above.

96. Anna Fang and David Wong have acted in concert and in accordance with an unlawful agreement and plan to defeat Po-zen Wong's legitimate rights to the artwork formerly owned by Anna Fang.

97. In furtherance of the conspiracy, Anna Fang and David Wong have committed tortious acts including, without limitation, fraud, interference with contract, abuse of process, libel and defamation, as alleged more specifically above.

98. As a result of the civil conspiracy of David Wong and Anna Fang, Po-zen Wong has been damaged.

WHEREFORE, Plaintiff Po-zen Wong requests that this Court enter judgment in his favor and against Defendant David Wong in an amount to be proved in excess of $75,000, and for such other and further relief as this Court deems just and proper.

PLAINTIFF, PO-ZEN WONG

By: /s/ Paul S. Weinberg
Paul S. Weinberg, BBO No. 519550
John E. Garber, BBO No. 635313
Weinberg & Garber, P.C.
71 King Street
Northampton, MA 01060
(413) 582-6886
fax (413) 582-6881